1  Michael A. McGill, SBN 231613
2  mcgill@policeattorney.com
   Russell M. Perry, SBN 246252
3  russell@policeattorney.com
4  **LACKIE, DAMMEIER & MCGILL APC**
   367 North Second Avenue
5  Upland, CA  91786
6  Telephone: (909) 985-4003
7  Facsimile:  (909) 985-3299

8  Attorneys for Plaintiffs,
9  CHRISTOPHER CRAIG, ABRAHAM AGUAYO,
   and JAIME ANDRADE
10

FILED
CLERK U.S. DISTRICT COURT

MAY 2 3 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13  CHRISTOPHER CRAIG, ABRAHAM   ) Case No. **CV 11 - 04399** GHK (AGRx)
14  AGUAYO, and JAIME ANDRADE,    )
                                   ) **COMPLAINT FOR DAMAGES AND**
15              Plaintiffs,        ) **INJUNCTIVE RELIEF:**
                                   )
16          vs.                    )  1. **Violation of Civil Rights, 42**
                                   )     **U.S.C. § 1983**
17  CITY OF KING CITY, a municipal )  2. **Violation of 42 U.S.C. §12112(a),**
                                   )     **Discrimination based on**
18  corporation; NICK BALDIVIEZ,  )     **regarded as disability.**
    individually and as Chief of Police for )  3. **Violation of 42 U.S.C. §12203**
19  the King City Police Department; )     **Retaliation for opposing**
                                   )     **unlawful practice.**
20  MICHAEL POWERS, individually and )  4. **Violation of 42 U.S.C.**
    as City Manager for the King City; )     **§12112(d)(4)(A) Unlawful Order**
21  MARK BAKER, individually and as )     **for Fitness FFDE**
                                   )  5. **Violation of MMBA, CA Gov't**
22  Sergeant for the King City Police )     **Code §§3502, 3506; CCP §1085**
    Department; JERRY HUNTER       )  6. **Violation of POBOR, CA Gov't**
23                                 )     **Code §§3302; 3309.5.**
    individually and as "acting" Sergeant )  7. **Violation of CMIA, CA Civil**
24  for the King City Police Department; )     **Code §§56.35; 56.36**
                                   )  8. **Violation of CMIA, CA Civil**
25  MYRNA GLICK individually, and as )     **Code §56.20.**
    an agent for King City; THE    )  9. **Violation of Robbins-Rosenthal**
26  STEWART, LLC, dba Aaron's Sales )     **FDCPA, CA Civil Code §§ 1788,**
                                   )     **et seq.**
27  and Lease;  and DOES 1 THROUGH )  10. **Violation of FDCPA,15 U.S.C.**
    10 INCLUSIVE,                  )     **§1692.**
28              Defendants.        )
                                   ) **DEMAND FOR JURY TRIAL**
                                   ) F.R. Civ. P. Rule 38;C.D. LR 38-1]

# I.

## PREFATORY

1.    This is an action for damages and injunctive relief for personal injury suffered by the Plaintiffs as a result of wrongful retaliation for the lawful exercise of individual civil rights and liberties of free expression and participation in labor, union, and political activities. Defendants also violated various state and federal laws.

# II.

## JURISDICTION AND VENUE

2.    Plaintiffs action is authorized by 42 U.S.C. §1983, which provides for redress for the deprivation under color of state law of rights secured by the Constitution and the laws of the United States.  Plaintiffs also bring this action under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*. ("ADA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. Jurisdiction is conferred on this Court by 28 U.S.C. §1343(3), providing for jurisdiction in this Court of suits authorized by 42 U.S.C. §1983 to redress the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution of the United States, and by 28 U.S.C. §1343(4), providing for the protection of civil rights, and by 28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the constitution, laws or treaties of the United States. Federal supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. §1367.  This Court has authority to provide declaratory and injunctive relief in this case pursuant to 28 U.S.C. §§2201 and 2202.  Venue is proper in the Central District of California pursuant to 42 U.S.C. §1391(b), as one of the named defendants resides within the Central District.

## III.

## **PARTIES**

3.     Plaintiff CHRIS CRAIG was, at all times relevant to this claim unless otherwise mentioned herein, employed by Defendant CITY OF KING CITY in the capacity of Police Officer with the King City Police Department, and as such is entitled to the benefits and protections of the Public Safety Officers Procedural Bill of Rights ("POBOR") Act, Government Code section 3300 et seq. Plaintiff's home address is confidential under Penal Code §§146(e) and 832.7, and Vehicle Code §1808.4(a)(11).

4.     Plaintiff ABRAHAM AGUAYO was, at all times relevant to this claim unless otherwise mentioned herein, employed by Defendant CITY OF KING CITY in the capacity of Police Officer with the King City Police Department, and as such is entitled to the benefits and protections of the Public Safety Officers Procedural Bill of Rights ("POBOR") Act, Government Code section 3300 et seq. Plaintiff's home address is confidential under Penal Code §§146(e) and 832.7, and Vehicle Code §1808.4(a)(11).

5.     Plaintiff JAIME ANDRADE was, at all times relevant to this claim unless otherwise mentioned herein, employed by Defendant CITY OF KING CITY in the capacity of Police Officer with the King City Police Department, and as such is entitled to the benefits and protections of the Public Safety Officers Procedural Bill of Rights ("POBOR") Act, Government Code section 3300 et seq. Plaintiff's home address is confidential under Penal Code §§146(e) and 832.7, and Vehicle Code §1808.4(a)(11).

6.     Defendant CITY OF KING CITY ("the City") is a duly constituted municipal corporation operating under the laws of the State of California, wholly situated in the County of Monterey. The King City Police Department ("the Department") is an operating department of the City. At all times relevant herein for all purposes connected with the management of

3
COMPLAINT FOR DAMAGES

1  employment relations matters within the King City Police Department, the City
2  delegated its final policy-making authority to Defendant BALDIVIEZ and
3  Defendant POWERS. City adopted and ratified each of his decisions as alleged
4  herein as its own policies, customs, practices or decisions, as if the same had been
5  promulgated directly by the City. Defendant CITY OF KING CITY is a covered
6  entity for the purposes of the ADA pursuant to 42 U.S.C. §12111.

7       7.      Defendant NICK BALDIVIEZ ("BALDIVIEZ") was, at all times
8  relevant to this action, except as otherwise mentioned, the Chief of Police for the
9  King City Police Department. In doing the things alleged herein, BALDIVIEZ
10 acted under color of state law, within the course and scope of his employment, and
11 as an official policy-maker for the City. As a Department Head, BALDIVIEZ was
12 vested with policy-making authority over actions such as the ones at issue in this
13 complaint.

14      8.      Defendant MICHAEL POWERS ("POWERS") was, at all times
15 relevant to this action, except as otherwise mentioned, the City Manager for King
16 City. In doing the things alleged herein, POWERS acted under color of state law,
17 within the course and scope of his employment, and as an official policy-maker for
18 the City. As a City Manager, POWERS was vested with policy-making authority
19 over actions such as the ones at issue in this complaint.

20      9.      Defendant MARK BAKER ("BAKER") was, at all times relevant to
21 this action, except as otherwise mentioned, Sergeant for the King City Police
22 Department. In doing the things alleged herein, BAKER acted under color of state
23 law, within the course and scope of his employment, and as an official policy-
24 maker for the City.

25      10.     Defendant JERRY HUNTER ("HUNTER") was, at all times relevant
26 to this action, except as otherwise mentioned, acting Sergeant for the King City
27 Police Department. In doing the things alleged herein, HUNTER acted under color
28

4
**COMPLAINT FOR DAMAGES**

1 of state law, within the course and scope of his employment, and as an official
2 policy-maker for the City.

3    11.    Defendant MYRNA GLICK ("GLICK") may be considered an
4 employee of the City, as, at all times she acted as a servant and agent of the City.
5 She was employed/authorized by the City to conduct a fitness for duty examination
6 ("FFDE") of Plaintiff, CRAIG.  In doing the things alleged herein, GLICK acted
7 under color of state law, within the course and scope of her employment, as a
8 servant and agent of the City.

9    12.    Defendant, THE STEWART, LLC, dba Aaron's Sales and Lease
10 ("STEWART"), is a leasing company that conducts business at 1557 North
11 Sanborn Rd, Salinas, CA, 93905. Leticia Diaz is the general manager for
12 STEWART and is authorized to enter into contracts on behalf of STEWART.
13 Leticia Diaz acted in the course and scope of said agency, service and employment
14 with STEWART at all relevant times

15    13.    Defendant DOES 1 through 10 are not known or identified at this
16 time.  On information and belief, Plaintiffs alleges that each Doe is in some
17 manner responsible for the wrongs alleged herein, and that each such Defendant
18 advised, encouraged, participated in, ratified, directed, or conspired to do, the
19 wrongful acts alleged herein.  When the true names and capacities of said
20 Defendants become known, Plaintiffs will seek relief to amend this Complaint to
21 show their true identities in place of their fictitious names as DOES 1 through 10.

## IV.

## **FACTS COMMON TO ALL COUNTS**

24    14.    In or about March 2005, Plaintiff CHRIS CRAIG was hired by King
25 City as a Police Officer.  While at all times employed by the Department, Plaintiff
26 performed his duties competently and without difficulty.

27
28

1    15.   In or about January 2007, Plaintiff ABRAHAM AGUYAO was hired
2  by King City as a Police Officer. While at all times employed by the Department,
3  Plaintiff performed his duties competently and without difficulty.

4    16.   In or about November 2007, Plaintiff JAIME ANDRADE was hired
5  by King City as a Police Officer. While at all times employed by the Department,
6  Plaintiff performed his duties competently and without difficulty.

7                    ***Plaintiffs Protected Activities***

8    17.   In or about April 3, 2010, Plaintiff CRAIG was elected President of
9  the King City Police Officer's Association ("the Association" or "POA"). Since
10  that time, Plaintiff CRAIG has actively taken part in numerous speech, labor, and
11  political activities in his capacity as President of the Association, and as a general
12  member.

13   18.   In or about April 3, 2010, Plaintiff ANDRADE was elected Treasurer
14  of the King City Police Officer's Association.  Since that time, Plaintiff
15  ANDRADE has actively taken part in numerous speech, labor, and political
16  activities in his capacity as Treasurer of the Association, and as a general member.

17   19.   In or about August 2010, Plaintiff AGUAYO was elected Vice
18  President of the King City Police Officer's Association.  Plaintiff AGUAYO has
19  actively taken part in numerous speech, labor, and political activities in his
20  capacity as Vice President of the Association, and as a general member prior to his
21  election to Vice President.

22   20.   In or about July 30, 2010, in his capacity as POA President, Plaintiff
23  CRAIG wrote a memorandum to Defendant, POWERS, indicating that the King
24  City POA gave Defendant, Chief BALDIVIEZ, a vote of 'no confidence.' The
25  memorandum was circulated to all the King City POA members for approval prior
26  to the vote. Plaintiffs CRAIG, ANDRADE, and AGUAYO all voted in favor of the
27  'no confidence' memorandum. The vote was based on numerous incidents that
28  occurred over an 18 month period. Information contained in the memorandum was

1  ultimately broadcasted to the public by local TV stations and printed in local
2  newspapers.

3      21.    According to the July 30, 2010 memorandum, the King City POA was
4  concerned that a probationary officer was released from the job for reasons other
5  than performance and Defendant BALDIVIEZ' selection of the replacement
6  officer occurred under suspicious circumstances. Specifically, Defendant
7  BALDIVIEZ did not notify all the senior reserve officers that a position was
8  available and instead, unilaterally appointed a reserve officer of his choice almost
9  immediately following the release of the probationary employee. The probationary
10 officer was released on Sunday, July 25, 2010 and the reserve officer began
11 working as a full time officer on Monday, July 26, 2010. The normal process for
12 promoting a reserve officer was not followed by Defendant BALDIVIEZ.
13 Furthermore, the probationary officer appeared to be a very good officer and in
14 fact, just before his release from probation, he had located and arrested a shooting
15 suspect. The King City POA members and Plaintiffs CRAIG, ANDRADE, and
16 AGUAYO were concerned about Defendant Baldiviez' motives for releasing the
17 probationary officer and appointing the new officer.

18     22.    Plaintiffs CRAIG, ANDRADE, and AGUAYO were also concerned
19 that Defendant BALDIVIEZ discriminated against officers who may have been (or
20 were perceived to be) overweight in violation of the ADA. The state and federal
21 laws are designed to protect employees from discrimination and harassment based
22 on actual or perceived physical disabilities.

23     23.    Plaintiffs CRAIG and ANDRADE were required to participate in the
24 weight loss program under threat of termination by Defendant BALDIVIEZ. They
25 were forced to participate in the program despite the fact that a medical doctor
26 reported to Defendant BALDIVIEZ that CRAIG and ANDRADE were fit for duty.
27 When CRAIG later spoke with Defendant BALDIVIEZ, Defendant BALDIVIEZ
28 responded, "You are fit to exercise." Based on information and belief, private

7

**COMPLAINT FOR DAMAGES**

1   information about CRAIG and ANDRADE was released to King City by the
2   medical doctor that completed the initial examinations.

3       24.     Plaintiff CRAIG was placed on a weight loss program and ordered to
4   lose at least eight pounds a month. One month CRAIG did not make the weight
5   loss as dictated by Defendant BALDIVIEZ and he was given a letter of discussion.

6       25.     Despite the Defendants perception that CRAIG was overweight, he
7   demonstrated that he was fit to work as a police officer. On one occasion, CRAIG
8   successfully jumped approximately ten six foot fences with his patrol rifle to clear
9   residential back yards for a shooting suspect. Nevertheless, he was still kept on the
10  weight loss program.  Capt. Bruce Miller asked the City Manager, Defendant
11  POWERS, if CRAIG was going to be kept on the weight loss program even though
12  he had performed his duties by jumping so many fences and Defendant POWERS
13  responded that CRAIG was going to stay on the weight loss program because
14  public perception was that CRAIG was overweight. A couple of months later,
15  when a "fit" officer went out on medical for a month for a heart condition, CRAIG
16  informed Chief Baldiviez he was seeking legal counsel regarding the weight loss
17  program.

18      26.     Plaintiff CRAIG told Defendant BALDIVIEZ that the mandated
19  weight loss program violated state and federal laws. After Plaintiff CRAIG
20  reported the law violations to Defendant BALDIVIEZ and indicated that the
21  officers in the weight loss program, including Plaintiff ANDRADE, were going to
22  seek legal counsel, the mandated weight loss program, quickly ceased.

23      27.     In March of 2011, Plaintiffs CRAIG and ANDRADE requested and
24  received copies of their personnel files and all the documents referencing the
25  weight loss program were removed. Based on information and belief, Defendants
26  POWERS and BALDIVIEZ destroyed the records related to the weight loss
27  program in order to hide their illegal acts.

28

8
**COMPLAINT FOR DAMAGES**

1    28.    Plaintiffs CRAIG and ANDRADE were subjected to adverse
2    employment actions in retaliation for reporting the law violations to Defendant
3    BALDIVIEZ.

4    29.    Furthermore, Plaintiffs CRAIG, AGUAYO, and ANDRADE, have
5    been subjected to adverse employment actions in retaliation for their collective
6    report of the above law violations in the July 30, 2010 vote of no confidence
7    memo.

8    30.    Via the July 30, 2010 vote of 'no confidence' against Defendant
9    BALDIVIEZ, Plaintiffs CRAIG, ANDRADE, and AGUAYO also expressed their
10   concern about Defendant BALDIVIEZ arriving to crime scenes intoxicated.

11   31.    According to the July 30, 2010 memorandum, Defendant
12   BALDIVIEZ arrived at crimes scenes intoxicated. One of the incidents occurred
13   on Beech Street. Defendant BALDIVIEZ showed up to a shooting and he appeared
14   to be under the influence of alcohol. A strong odor of alcohol emitted from his
15   breath, and his eyes were red and watery. Defendant POWERS was also present
16   with Defendant BALDIVIEZ. An on-scene Sergeant was notified and he notified
17   the on-scene Captain.

18   32.    On or about March 3, 2010, Defendant BALDIVIEZ showed up to
19   another shooting and he appeared to be under the influence of alcohol.
20   A strong odor of alcohol emitted from his vehicle. A strong odor of alcohol emitted
21   from his breath, and his eyes were red and watery. Defendant BALDIVIEZ took it
22   upon himself to aggressively interview one of the witnesses. He stepped in blood at
23   the crime scene and yelled at witnesses. Once again, an on-scene Sergeant was
24   notified.

25   33.    Defendant POWERS stated to the King City Police Officers at a
26   briefing that if anyone says anything bad about Defendant BALDIVIEZ he
27   (POWERS) is going to take it personal. Defendant POWERS stated he would fire
28   employees for saying anything bad about Defendant BALDIVIEZ.

34. On August 4, 2010, Plaintiff CRAIG wrote a memo on behalf of the King City POA to Defendant POWERS that they were standing firm with the prior vote of no confidence in the Chief.

36. On August 9, 2010, Plaintiff CRAIG wrote a memo on behalf of the King City POA to Defendant POWERS objecting to the fact that Defendant POWERS was going to conduct the Internal Affairs investigation of Defendant BALDIVIEZ. In the memorandum, Claimant CRAIG reported that Defendant POWERS said he would take it personal if anyone says anything bad about Defendant BALDIVIEZ. Defendant POWERS stated he would fire employees for saying anything bad about Defendant BALDIVIEZ. Defendant POWERS also made false comments to the media, accusing the King City POA of exploiting the issue because they were in contract negotiations. Finally, the King City POA believed that it was inappropriate for Defendant POWERS to conduct the Internal Affair investigation because he was a witness to at least one of the incidents where Defendant BALDIVIEZ allegedly arrived at a crime scene intoxicated.

37. On August 19, 2010, the City Attorney, Roy Hanley, wrote Plaintiff CRAIG a critical response and questioned his motives for the vote of no confidence. Mr. Hanley stated that, "[i]t is rumored that the vote was with only five members present, with only three voting in favor." The letter went on to state, "[i]f you were just seeking impartial justice, you would not have issued a press release and appeared on television in an apparent effort to get the chief fired. Those are the actions of persons who want a predetermined result. Those are not the actions of someone or an organization that is only seeking impartial justice." This letter was cc'd to Defendant POWERS and the City Council. It's no coincidence that all three King City POA Board members that voted in favor of the vote of no confidence against Defendant BALDIVIEZ found themselves to be the subject of internal affairs investigations within eleven days of Defendant BALDIVIEZ' return to work, following administrative leave. Based on information and belief, Defendant

1  BALDIVIEZ also stated that he had "something in the works" for the person (or
2  persons) responsible for exposing his misconduct.

3              *Retaliation, Discrimination, Harassment*

4      38.     On September 14, 2010, Defendant BALDIVIEZ returned to work
5  following the internal investigation and administrative leave.

6      39.     The very next day (September 15, 2010) Defendant BALDIVIEZ
7  authorized an internal affairs investigation of Plaintiff ANDRADE for an incident
8  that had occurred six months earlier. Based on information and belief, the
9  investigation was initiated in retaliation for Plaintiff ANDRADE engaging in
10  protected activities.

11      40.     Ten days after his return to work (September 24, 2010), Defendant
12  BALDIVIEZ initiated an Internal Affairs investigation of Plaintiff CRAIG for a
13  minor incident that occurred on September 17, 2010.  The incident was initiated by
14  Defendant BAKER, and, based on information and belief it was initiated in
15  retaliation for Plaintiff CRAIG's protected

16  activities. Just one month earlier, Defendant BAKER made it clear to the City
17  Council that he did not agree with the King CITY POA vote of no confidence.

18      41.     The September 17, 2010 incident involved an allegation that Plaintiff
19  CRAIG took too long (approx. 20 minutes) to transport a suspect to jail and return
20  to King City. This incident was pursued by Defendant BAKER.

21      42.     On or about September 27, 2010, Defendant BALDIVIEZ initiated
22  another Internal Affairs investigation of Plaintiff CRAIG for another minor
23  incident. The second incident occurred on September 25, 2010 and it involved an
24  allegation that Plaintiff CRAIG used profanity with HUNTER. Specifically, when
25  two police reports were returned to Plaintiff CRAIG by HUNTER to correct,
26  Plaintiff CRAIG entered into HUNTER's office and said, "What the fuck is up
27  with this shit?" HUNTER stated, "[e]xcuse me?" Plaintiff CRAIG quickly
28  responded, "[m]aybe I should start over again." Hunter responded, "[t]hat would

                                11

1  be a good idea." Plaintiff Craig then went on to explain why the reports should not

2  have been sent back in a very respectful manner. CRAIG later apologized to

3  HUNTER after he saw that his use of profanity offended him. The incident was

4  initiated by Defendant HUNTER, and, based on information and belief, that it was

5  initiated in retaliation for Plaintiff CRAIG's protected activities. Just one month

6  earlier, Defendant HUNTER made it clear to the City Council that he did not agree

7  with the King CITY POA vote of no confidence.

8  43.     Based solely on the incidents above Defendant BALDIVIEZ

9  ultimately ordered Plaintiff CRAIG to undergo an intrusive psychological

10 examination. This referral was made, even though Claimant CRAIG's annual

11 evaluation (completed September 19, 2010) was positive and devoid of any

12 concern that CRAIG was unable to perform the duties of a police officer.

13 44.     On September 25, 2010, with the assistance of Defendant HUNTER,

14 Defendant BALDIVIEZ opened an internal affairs investigation on the King City

15 Vice President, Plaintiff, AGUAYO. Defendant HUNTER went out of his way to

16 make sure that the complaining party filed a complaint against AGUAYO, and he

17 even personally delivered the complaint to the reporting party's home that was

18 located approximately 50 miles away from the City of King and the King City

19 Police Department's jurisdiction. This investigation was initiated just eleven days

20 after BALDIVIEZ' returned to work.

21 45.     Plaintiff AGUAYO was immediately placed on administrative leave

22 and ordered not to enter any City property or to have any contact with any City

23 employee, in any manner. The scope of this order violated the First Amendment,

24 the Meyers Milias Brown Act, and Peace Officer's Procedural Bill of Rights.

25 Public employees have the right to participate in union activities without

26 interference by their employer. This order effectively prevented Plaintiff

27 AGUAYO from any POA activities and from associating with all city employees.

28

46. On September 25, 2010, Defendant BALDIVIEZ issued a memo to all employees with the King City Police Department that Plaintiff AGUAYO was placed on administrative leave and ordered not to have any contact with any employee. If anyone had any contact with Plaintiff AGUAYO they were to notify Defendant BALDIVIEZ immediately. The scope of this order clearly violated the First Amendment, the Meyers Milias Brown Act, and Peace Officer's Procedural Bill of Rights. Public employees have the right to participate in union activities. This order effectively prevented all employees from having any sort of contact with Plaintiff AGUAYO.

47. In October 2010, Defendant BALDIVIEZ allegedly received a call from Leticia Diaz, a manager of STEWART dba Aaron's Sales and Lease, and she stated that Plaintiff AGUAYO was behind in his payments. This release of information violated the Robbins-Rosenthal Fair Debt Collections Practices Act, Civil Code §1788 et. seq. and the Fair Debt Collection Practices Act, 15 U.S.C.A. §1692.

48. One week later Defendant BALDIVIEZ allegedly contacted Diaz and discovered that Plaintiff ANDRADE came in and cosigned for the property on behalf of Plaintiff AGUAYO. Leticia Diaz subsequently released Plaintiff ANDRADE's private information, violating the Information Practices Act of 1977, Civil Code §§ 1798 et. seq.

49. On October 2010 Plaintiff CRAIG drafted a memo to Captain Miller stating that it was a hostile work environment working under the supervision of BAKER and HUNTER, and he requested a transfer. Defendant BALDIVIEZ denied his request and he stated there was no ground for CRAIG's claim, but stated that the request would be considered during the next shift change in January 2011. In the proposed January 2011 schedule Defendant BALDIVIEZ moved Plaintiff CRAIG from BAKER's shift to HUNTER's shift.

50. On November 22, 2010, Plaintiff ANDRADE was notified of an internal affairs investigation that was based on the allegation that he violated the no contact order. Defendant BALDIVIEZ also initiated another internal affairs investigation of Plaintiff AGUAYO for violating his order not to have any contact with a City employee for any reason.

51. On December 7, 2010 Defendant BALDIVIEZ, without a reasonable basis and in violation of the Americans with Disabilities Act (42 U.S.C. §21112), ordered Plaintiff CRAIG to undergo an intrusive fitness for duty examination. This order was based on the alleged misconduct that occurred September 17th and 25th.

52. Plaintiff CRAIG refused to consent to the release of protected medical and mental health records compiled by Defendant GLICK to Defendant BALDIVIEZ. Based on information and belief, this angered the Defendants and it provided an additional motive for retaliation.

53. On December 31, 2010, Plaintiff CRAIG was placed on administrative leave do to Dr. Glick's finding that Claimant Craig was allegedly not fit.

54. On January 3, 2011, Plaintiff CRAIG consented to the release of information by Dr. Glick only to the extent that she was already authorized to release by law [California Civil Code §56.10 (c)(8)]. Plaintiff CRAIG did not consent to the release of detailed privileged psychological information. Despite the restricted scope of consent, Dr. Glick, unlawfully released confidential information in her report dated January 19, 2011. This blatant disregard of Claimant CRAIG's right to privacy and right to limit the scope of protected private information [see the Confidentiality of Medical Information Act, Civil Code §§56 et. seq.] demonstrated that Dr. Glick is not a neutral psychologist and is instead, performing retaliatory acts against Plaintiff CRAIG, on behalf of Defendant BALDIVIEZ, and as an agent of Defendant KING CITY.

1     55.     On January 18, 2011, Defendant BALDIVIEZ notified Plaintiff
2 ANDRADE that he was going to be suspended for two days for allegedly violating
3 his no contact order.

4     56.     On January 24, 2011, Defendant BALDIVIEZ opened yet another
5 Internal Affairs investigation of Plaintiff AGUAYO.

6     57.     On January 27, 2011, Defendant BALDIVIEZ opened yet another
7 Internal Affairs investigation of Plaintiff ANDRADE.

8     58.     On February 7, 2011, Defendant BALDIVIEZ terminated Plaintiff
9 CRAIG based on the findings of Dr. Glick that Plaintiff CRAIG was not fit for
10 duty.

11     59.     Plaintiff CRAIG strongly disagreed with Dr. Glick's findings and, in
12 fact, just days prior to the examination by Dr. Glick, he was examined by a
13 qualified psychologist and was found to be fit.

14     60.     Defendant BALDIVIEZ relied on a severely deficient report from Dr.
15 Glick that failed to mention any functional limitations and/or reasonable
16 accommodations.

17     61.     Defendant BALDIVIEZ failed to consider the fact that Plaintiff
18 CRAIG was found fit by a qualified psychologist who evaluated Plaintiff CRAIG
19 just days before Dr. Glick. Defendant BALDIVIEZ declined to consider any
20 accommodations. Defendant BALDIVIEZ relied on private information
21 unlawfully release by Dr. Glick, in violation of state law.

22     62.     Finally, Defendant BALDIVIEZ' hatred and ill will for Plaintiff
23 CRAIG continued on after the improper discharge. Despite the fact that Defendant
24 BALDIVIEZ stated in his Notice of Termination that the termination of Plaintiff
25 CRAIG was not based on misconduct, Defendant BALDIVIEZ personally
26 appeared before an Administrative Law Judge for the California Unemployment
27 Appeals Board in a failed effort to prevent Plaintiff CRAIG from collecting
28 unemployment benefits. Defendant BALDIVIEZ' appeared before Administrative

1 Law Judge Carlson on May 3 and admitted that in his Notice of Termination he
2 stated that the termination was not based on misconduct. Unemployment Insurance
3 Code Section 1256 states in part that "[a]n individual is disqualified for
4 unemployment compensation benefits if the director finds that he or she left his or
5 her most recent work voluntary without good cause or that he or she has been
6 discharged for misconduct connected with his or her most recent work."
7 Because Plaintiff CRAIG was not terminated for misconduct, Judge Carlson did
8 not understand why Defendant BALDIVIEZ was appealing the decision to allow
9 Plaintiff CRAIG to receive unemployment benefits. In a written Opinion, dated
10 May 6, 2011, Judge Carlson found that Plaintiff CRAIG was not disqualified from
11 receiving unemployment benefits pursuant to Unemployment Insurance Code
12 Section 1256, because he was not terminated for misconduct. Defendant
13 BALDIVIEZ' behavior is especially egregious because he knows that Plaintiff
14 CRAIG is currently struggling to provide for his family (including his two month
15 old baby) and Defendant BALDIVIEZ continues to do everything in his power to
16 injure Plaintiff CRAIG, even if his position has no basis in law or fact.

17 63.     On March 7, 2011, Defendant BALDIVIEZ terminated Plaintiff
18 AGUAYO.

19 64.     On March 31, 2011, Plaintiff Andrade received a Notice of Intent to
20 Suspend for three days, based on the internal affair investigation initiated on
21 January 27, 2011.

22 65.     In engaging in the aforementioned actions, Plaintiffs CRAIG,
23 ANDRADE, and AGUAYO exercised their rights under state and federal law,
24 including those to free speech, free association, the right to seek redress through
25 petition, the right to engage in political activities and to report wrongdoing,
26 corruption and other important information. Plaintiffs CRAIG, ANDRADE, and
27 AGUAYO also exercised their rights under POBOR, MMBA, ADA, as well as
28 their rights to privacy and confidentiality [See the Robbins-Rosenthal Fair Debt

1  Collections Practices Act, Civil Code §1788 et. seq; and the Fair Debt Collection
2  Practices Act, 15 U.S.C.A. §1692; the Information Practices Act of 1977, Civil
3  Code §§ 1798 et. seq; and the Confidentiality of Medical Information Act, Civil
4  Code §§56 et. seq.] At all times, Plaintiffs CRAIG, ANDRADE, and AGUAYO
5  actions and conduct
6  were protected.

7  66.   On February 25, 2011, Plaintiffs mailed a detailed Tort Claim to the
8  King City Clerk in compliance with the Government Claims Act. Forty-five days
9  has past and the City has not served Plaintiffs a rejection letter.

10  67.   On March 8, 2011, Plaintiff CRAIG filed a complaint with the U.S.
11  Equal Employment Opportunity Commission ("EEOC") alleging violations of the
12  Americans with Disabilities Act ("ADA"). The EEOC mailed the Right to Sue
13  Notice on March 10, 2011. This lawsuit was filed within the 90 day time period
14  outlined in the Notice of Right to Sue letter.

15  68.   On March 8, 2011, Plaintiff AGUAYO filed a complaint with the
16  U.S. Equal Employment Opportunity Commission ("EEOC") alleging a violation
17  of the Americans with Disabilities Act ("ADA"). The EEOC mailed the Right to
18  Sue Notice on March 18, 2011. This lawsuit was filed within the 90 day time
19  period outlined in the Notice of Right to Sue letter.

20  69.   On March 8, 2011, Plaintiff ANDRADE filed a complaint with the
21  U.S. Equal Employment Opportunity Commission ("EEOC") alleging violations
22  of the Americans with Disabilities Act ("ADA"). The EEOC mailed the Right to
23  Sue Notice on March 10, 2011. This lawsuit was filed within the 90 day time
24  period outlined in the Notice of Right to Sue letter.

25                                    V.

26                         **CAUSES OF ACTION**
27                           **COUNT ONE**
28                         *42 U.S.C. 1983*

*Plaintiffs CRAIG, ANDRADE, and AGUAYO against Defendants CITY OF KING CITY, BALDIVIEZ, POWERS, BAKER, HUNTER, and GLICK*

70.    Plaintiffs hereby incorporate each and every proceeding paragraph, as though set forth in full here.

71.    Defendants CITY OF KING, BALDIVIEZ, POWERS, BAKER, and HUNTER retaliated against Plaintiff CRAIG by initiating bogus internal affair investigations in order to subject CRAIG to an adverse employment action. Defendants BAKER and HUNTER initiated the bogus internal affair investigations in order to set Plaintiff CRAIG up for and adverse employment action that would later be determined by Defendants BALDIVIEZ and POWERS.

72.    Based on information and belief Defendant BALDIVIEZ communicated his hatred for CRAIG to Defendant GLICK in order to convey his preference that she ultimately find CRAIG unfit for duty. Defendant GLICK conducted a sham mental examination; her final report is severely deficient and it does not support her findings. Furthermore, despite having full knowledge that Plaintiff CRAIG did not consent to the release of private information, Defendant GLICK included the information in the report in order to ensure that Plaintiff CRAIG would be subjected to termination by Defendant BALDIVIEZ and POWERS.  As a direct result of the Plaintiff CRAIG exercising his constitutional rights to free speech and participating in labor, organizational, social and political activities as a member and President of the Police Officers' Association, Defendants CITY OF KING, BALDIVIEZ, POWERS, BAKER, HUNTER, and GLICK took the aforementioned adverse actions against him. Plaintiff CRAIG also opposed a practice prohibited by the ADA. Absent said protected speech, Plaintiff CRAIG would not have suffered adverse employment actions, and would not have been injured.

73. Defendants CITY OF KING, BALDIVIEZ, POWERS, and HUNTER retaliated against Plaintiff AGUAYO by initiating bogus internal affair investigations in order to subject AGUAYO to an adverse employment action, specifically termination. As a direct result of the Plaintiff AGUAYO exercising his constitutional rights to free speech and participating in labor, organizational, social and political activities as a member and Vice President of the Police Officers' Association, Defendants CITY OF KING, BALDIVIEZ, POWERS, and HUNTER, took the aforementioned adverse actions against him. Plaintiff AGUAYO also opposed a practice prohibited by the ADA. Absent said protected speech, Plaintiff AGUAYO would not have suffered adverse employment actions, and would not have been injured. Plaintiff AGUAYO was ordered not to enter any City property or to have any contact with any City employee, in any manner. The scope of this order violated the First Amendment. Public employees have the right to participate in union activities without interference by their employer. This order effectively prevented Plaintiff AGUAYO from any POA activities and from associating with all city employees.

74. Defendants CITY OF KING, BALDIVIEZ, POWERS, and BAKER, retaliated against Plaintiff ANDRADE by initiating bogus internal affair investigations in order to subject ANDRADE to adverse employment actions, specifically three different suspensions. As a direct result of the Plaintiff ANDRADE exercising his constitutional rights to free speech and participating in labor, organizational, social and political activities as a member and Treasurer of the Police Officers' Association, Defendants CITY OF KING, BALDIVIEZ, POWERS, and BAKER, took the aforementioned adverse actions against him. Plaintiff ANDRADE also opposed a practice prohibited by the ADA. Absent said protected speech, Plaintiff ANDRADE would not have suffered adverse employment actions, and would not have been injured.

75.     The various acts of intimidation, reprisal, retaliation, suppression and/or restraint exercised by Defendants CITY OF KING, BALDIVIEZ, POWERS, BAKER, HUNTER, and GLICK against Plaintiffs have created a chilling effect on their legitimate political, social and organizational speech by creating fear, hesitation, hostility and other destructive responses.

76.     In doing the things alleged herein, Defendants CITY OF KING, BALDIVIEZ, POWERS, BAKER, HUNTER, and GLICK, and each of them, violated the rights of Plaintiffs under the First and Fourteenth Amendments to the United States Constitution to free expression, association and assembly. Specifically, Defendants CITY OF KING, BALDIVIEZ, POWERS, BAKER, HUNTER, and GLICK have taken the aforementioned action against Plaintiffs in direct retaliation for, and in response to the various protected activities of Plaintiffs.

77.     As a direct and proximate result of the misconduct and unlawful actions of Defendants, and each of them, Plaintiffs sustained severe and serious injury to their person, all to Plaintiffs damage in a sum to be shown according to proof. As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered and continues to suffer substantial losses in income, earnings, and benefits and has been damaged in their capacity to earn their salary, and have lost, and will continue to lose, employment benefits. Plaintiffs have also suffered pain and suffering, mental anguish, and emotional distress.

78.     Based upon information and belief, the acts and omissions of Defendants CITY OF KING, BALDIVIEZ, POWERS, BAKER, HUNTER, and GLICK, and each of them, were done by Defendants under color of state law and as final policy making authorities to which Defendant CITY OF KING CITY delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed. The acts and omissions described above were taken by the City's official policy makers as

1    members charged with such responsibility. More specifically, the City's municipal
2    code vests final policy making authority with regard to promotions and discipline
3    in the city manager. Furthermore, at all times, and based upon information and
4    belief, the City's express policy has been for the city manager to delegate such
5    policy making authority to Defendant BALDIVIEZ, the Department Head and the
6    City's highest-ranking sworn official. Accordingly, pursuant to City policy and
7    practice, BALDIVIEZ is delegated and thereby vested with final policy making
8    authority to make promotions and institute discipline within the Police Department.
9    This express policy and practice has remained intact for all prior promotions, and
10   the Chief of Police has been vested with the final word on behalf of the City as to
11   such decisions.

12   79.    It was or should have been plainly obvious to any reasonable policy
13   making official of City that the acts and omissions of Defendants BALDIVIEZ,
14   POWERS, BAKER, HUNTER, and GLICK as alleged herein, taking singly or in
15   conjunction, directly violated and continued to violate Plaintiffs clearly established
16   constitutional and statutory rights. In doing the things alleged herein, Defendants
17   BALDIVIEZ, POWERS, BAKER, HUNTER, and GLICK acted with malicious
18   intent to violate Plaintiffs rights, or at least in conscious, reckless, and callous
19   disregard of Plaintiffs rights and to the injurious consequences likely to result from
20   a violation of said rights. General and special damages are sought according to
21   proof. Punitive damages are sought against the individual defendants, according to
22   proof.

23   80.    Plaintiffs have no plain, speedy or adequate remedy at law to prevent
24   future violations of their civil rights, and therefore seek extraordinary relief in the
25   form of permanent injunctions, as hereafter described. Damages alone are
26   inadequate and injunctive relief is sought to command Defendants to reinstate
27   Plaintiff CRAIG's and AGUAYO's employment with the City, in order to place
28

21
COMPLAINT FOR DAMAGES

1  them in a position they would have been in, absent the unlawful conduct by
2  Defendants.

3  ## COUNT TWO

4  **Discrimination based on 'regarded as' disability - severe obesity**
5  **[42 U.S.C. §12102(3); 42 U.S.C. §12112(a)]**

6  *Plaintiffs CRAIG and ANDRADE against Defendant CITY OF KING CITY.*

7  81.    Plaintiffs CRAIG and ANDRADE hereby incorporates each and every
8  preceding paragraph as though set forth in full here.

9  82.    Plaintiffs CRAIG and ANDRADE are employees of Defendant CITY
10  OF KING CITY, as defined in 42 U.S.C. §12111(4).

11  83.    Plaintiffs CRAIG and ANDRADE are "qualified individuals" and the
12  Defendant CITY OF KING CITY regarded CRAIG and ANDRADE as being
13  disabled due to perceived severe obesity. See 42 U.S.C. §12102(1)(C); 42 U.S.C.
14  §12111(8); *U.S. Equal Employment Opportunity Commission v. Resources for*
15  *Human Development, Inc.,* E.D. La., No. 2:10-cv-03322 (filed Sept. 30, 2010).

16  84.    According to 42 U.S.C. §12112(a), "[n]o covered entity shall
17  discriminate against a qualified individual on the basis of disability in regard to job
18  application procedure, the hiring, advancement, or discharge of employees,
19  employee compensation, job training, and other terms, conditions, and privileges
20  of employment."

21  85.    Plaintiffs CRAIG and ANDRADE were discriminated against based
22  on this perception because they required to participate in a weight loss program
23  under threat of termination by Defendant BALDIVIEZ. They were forced to
24  participate in the program despite the fact that a medical doctor reported to
25  Defendant BALDIVIEZ that CRAIG and ANDRADE were fit for duty. When
26  CRAIG later spoke with Defendant BALDIVIEZ, Defendant BALDIVIEZ
27  responded, "You are fit to exercise."  Based on information
28  and belief, private information about CRAIG and ANDRADE was released

1   to King City by the medical doctor that completed the initial examinations.

2       86.     Plaintiff CRAIG was placed on a weight loss program and ordered to
3   lose at least eight pounds a month. One month CRAIG did not make the weight
4   loss as dictated by Defendant BALDIVIEZ and he was given a letter of discussion.

5       87.     Despite the Defendants perception that CRAIG was overweight, he
6   demonstrated that he was fit to work as a police officer. On one occasion, CRAIG
7   successfully jumped approximately ten six foot fences with his patrol rifle to clear
8   residential back yards for a shooting suspect. Nevertheless, he was still kept on the
9   weight loss program. Capt. Bruce Miller asked the City Manager, Defendant
10  POWERS, if CRAIG was going to be kept on the weight loss program even though
11  he had performed his duties by jumping so many fences and Defendant POWERS
12  responded that CRAIG was going to stay on the weight loss program because
13  public perception was that CRAIG was overweight. A couple of months later,
14  when a "fit" officer went out on medical for a month for a heart condition, CRAIG
15  informed Chief Baldiviez he was seeking legal counsel regarding the weight loss
16  program.

17      88.     Plaintiff CRAIG told Defendant BALDIVIEZ that the mandated
18  weight loss program violated state and federal laws. After Plaintiff CRAIG
19  reported the law violations to Defendant BALDIVIEZ and indicated that the
20  officers in the weight loss program, including Plaintiff ANDRADE, were going to
21  seek legal counsel, the mandated weight loss program quickly ceased.

22      89.     In March of 2011, Plaintiff's CRAIG and ANDRADE requested
23  received copies of their personnel files and all the documents referencing the
24  weight loss program were removed. Based on information
25  and belief, Defendants POWERS and BALDIVIEZ destroyed the records related to
26  the weight loss program in order to hide their illegal acts.

27      90.     Defendant CITY of KING CITY subjected Plaintiff's CRAIG and
28  ANDRADE to bogus internal affair investigations in order to subject them to

1  subsequent adverse employment actions. Defendants BAKER and HUNTER
2  initiated the bogus internal affair investigations in order to set Plaintiffs CRAIG
3  and ANDRADE up for an adverse employment action that would later be
4  determined by Defendants BALDIVIEZ and POWERS. Plaintiff CRAIG was
5  ultimately terminated and ANDRADE was suspended on three separate occasions.

6  91.     As a direct and proximate result of the misconduct and unlawful
7  actions of Defendants, and each of them, Plaintiffs CRAIG and ANDRADE
8  sustained severe and serious injury to their person, all to Plaintiffs damage in a sum
9  to be shown according to proof.  As a direct and proximate result of the
10  Defendants' conduct, Plaintiffs have suffered and continues to suffer substantial
11  losses in income, earnings, and benefits and has been damaged in their capacity to
12  earn their salary, and have lost, and will continue to lose, employment benefits.
13  Plaintiffs have also suffered pain and suffering, mental anguish, and emotional
14  distress.

15  92.     In doing the things alleged herein, Defendant CITY OF KING CITY
16  violated the rights of Plaintiffs CRAIG and ANDRADE protected by the
17  Americans with Disabilities Act.

18  ## COUNT THREE

19  **Retaliation for reporting/opposing a violation of the ADA**
20  **[42 U.S.C. §12203]**

21  *Plaintiffs CRAIG, ANDRADE, and AGUAYO against Defendant CITY OF*
22  *KING CITY.*

23  93.     Plaintiffs CRAIG, ANDRADE and AGUAYO hereby corporate each
24  and every preceding paragraph as though set forth in full here.

25  94.     According to 42 U.S.C. §12203(a), "[n]o person shall discriminate
26  against any individual because such individual has opposed any act or practice
27  made unlawful by this chapter..."

28

95.     Plaintiffs CRAIG, ANDRADE and AGUAYO opposed the unlawful weight loss program implemented by Defendant BALDIVIEZ under threat of termination and they were subjected to adverse employment actions as a result.

96.     Defendant CITY OF KING CITY retaliated against Plaintiffs CRAIG, ANDRADE, and AGUAYO by initiating bogus internal affair investigations in order to subject them to subsequent adverse employment actions. Defendants BAKER and HUNTER initiated the bogus internal affair investigations in order to set Plaintiffs CRAIG, ANDRADE, and AGUAYO up for an adverse employment actions that would later be determined by Defendants BALDIVIEZ and POWERS. Plaintiffs CRAIG and AGUAYO were ultimately terminated and ANDRADE was suspended on three separate occasions.

97.     As a direct result of the Plaintiffs CRAIG, ANDRADE, and AGUAYO exercising their right to oppose discriminatory practices, Defendant CITY OF KING CITY took the aforementioned adverse actions against them. Absent said protected activity, Plaintiff CRAIG would not have suffered adverse employment actions, and would not have been injured.

98.     As a direct and proximate result of the misconduct and unlawful actions of Defendants, and each of them, Plaintiffs sustained severe and serious injury to their person, all to Plaintiffs damage in a sum to be shown according to proof. As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered and continues to suffer substantial losses in income, earnings, and benefits and has been damaged in their capacity to earn their salary, and have lost, and will continue to lose, employment benefits. Plaintiffs have also suffered pain and suffering, mental anguish, and emotional distress.

99.     General and special damages are sought according to proof.

100.    Plaintiffs have no plain, speedy or adequate remedy at law to prevent future violations of their rights under the ADA, and therefore seek extraordinary relief in the form of permanent injunctions, as hereafter described. Damages alone

1  are inadequate and injunctive relief is sought to command Defendants to reinstate
2  Plaintiff CRAIG's and AGUAYO's employment with the City, in order to place
3  them in a position they would have been in, absent the unlawful conduct by
4  Defendants.

5
## COUNT FOUR
6
### Unlawful Order for Fitness for Duty Evaluation
7
### [42 U.S.C. §12112(d)(4)(A)]
8
### *Plaintiff CRAIG against Defendant CITY OF KING CITY.*

9    101.    Plaintiff CRAIG hereby incorporates each and every preceding
10 paragraph as though set forth in full here.

11   102.    According to 42 U.S.C. §21112(d)(4)(A) , "[a] covered entity shall
12 not require a medical examination and shall not make inquiries of an employee as
13 to whether such employee is an individual with a disability or as to the nature or
14 severity of the disability, unless such examination or inquiry is shown to be job-
15 related and consistent with business necessity."

16   103.    On September 14, 2010, Defendant BALDIVIEZ returned to work
17 following the internal investigation and administrative leave.
18
19   104.    Ten days after his return to work (September 24, 2010), Defendant
20 BALDIVIEZ initiated an Internal Affairs investigation of
21 Plaintiff CRAIG for a minor incident that occurred on September 17, 2010.  The
22 incident was initiated by Defendant BAKER, and, based on information and belief
23 it was initiated in retaliation for Plaintiff CRAIG's protected
24 activities. Just one month earlier, Defendant BAKER made it clear to the City
25 Council that he did not agree with the King CITY POA vote of no confidence.

26   105.    The September 17, 2010 incident involved an allegation that Plaintiff
27 CRAIG took too long (20 minutes) to transport a suspect to jail. This incident was
28 pursued by Defendant BAKER.

106.     On or about September 27, 2010, Defendant BALDIVIEZ initiated another Internal Affairs investigation of Plaintiff CRAIG for another minor incident. The second incident occurred on September 25, 2010 and it involved an allegation that Plaintiff CRAIG used profanity with HUNTER. Specifically, when two police reports were returned to Plaintiff CRAIG by HUNTER to correct, Plaintiff CRAIG entered into HUNTER's office and said, "What the fuck is up with this shit?" HUNTER stated, "[e]xcuse me?" Plaintiff CRAIG quickly responded, "[m]aybe I should start over again." Hunter responded, "[t]hat would be a good idea." Plaintiff Craig then went on to explain why the reports should not have been sent back in a very respectful manner. CRAIG later apologized to HUNTER after he saw that his use of profanity offended him. The incident was initiated by Defendant HUNTER, and, based on information and belief, it was initiated in retaliation for Plaintiff CRAIG's protected activities. Just one month earlier, Defendant HUNTER made it clear to the City Council that he did not agree with the King CITY POA vote of no confidence.

107.     Based solely on the incidents above Defendant BALDIVIEZ ultimately ordered Plaintiff CRAIG to undergo an intrusive psychological examination. This referral was made, even though Plaintiff CRAIG's annual evaluation (completed September 19, 2010) was positive and void of any concern that CRAIG was unable to perform the duties of a police officer.

108.     On December 7, 2010, Defendant BALDIVIEZ, without a reasonable basis and in violation of the Americans with Disabilities Act, ordered Plaintiff CRAIG to undergo an intrusive fitness for duty examination for his conduct related to the two incidents above. Taking too long (20 minutes) to book a suspect on one occasion and using profanity in one sentence with a supervisor (and thereafter immediately apologizing) is insufficient facts to support a referral for an intrusive fitness for duty exam. It is objectively unreasonable.

109.     Plaintiff CRAIG refused to consent to the release of protected medical and mental health records compiled by Defendant GLICK to Defendant BALDIVIEZ. Based on information and belief, this angered the Defendants and it provided an additional motive for retaliation.

110.     On December 31, 2010, Plaintiff CRAIG was placed on administrative leave do to Dr. Glick's finding that Plaintiff Craig was allegedly not fit.

111.     On January 3, 2011, Plaintiff CRAIG consented to the release of information by Dr. Glick only to the extent that she was already authorized to release by law [California Civil Code §56.10 (c)(8)]. Plaintiff CRAIG did not consent to the release of detailed privileged psychological information. Despite the restricted scope of consent, Dr. Glick, unlawfully released confidential information in her report dated January 19, 2011. This blatant disregard of Claimant CRAIG's right to privacy and right to limit the scope of protected private information [see the Confidentiality of Medical Information Act, Civil Code §§56 et. seq.] demonstrated that Dr. Glick is not a neutral psychologist and is instead, performing retaliatory acts against Plaintiff CRAIG, on behalf of Defendant BALDIVIEZ, and as an agent of Defendant CITY of KING CITY.

112.     Defendant CITY OF KING CITY retaliated against Plaintiff CRAIG, by sending him for a mandatory Fitness for Duty Examination without an objective basis. Plaintiff CRAIG was ultimately terminated based on the findings of the Defendant GLICK. As a direct and proximate result of the misconduct and unlawful actions of Defendants, and each of them, Plaintiff sustained severe and serious injury to his person, all to Plaintiffs damage in a sum to be shown according to proof. As a direct and proximate result of the Defendants' conduct, Plaintiff CRAIG has suffered and continues to suffer substantial losses in income, earnings, and benefits and has been damaged in his capacity to earn his salary, and

1 has lost, and will continue to lose, employment benefits. Plaintiff has also suffered
2 pain and suffering, mental anguish, and emotional distress.

3     113.     General and special damages are sought according to proof.

4     114.     Plaintiff CRAIG does not have a plain, speedy or adequate remedy at
5 law to prevent future violations of their rights under the ADA, and therefore seeks
6 extraordinary relief in the form of permanent injunctions, as hereafter described.
7 Damages alone are inadequate and injunctive relief is sought to command
8 Defendants to reinstate Plaintiff CRAIG's employment with the City, in order to
9 place them in a position they would have been in, absent the unlawful conduct by
10 Defendants.

## COUNT FIVE

### Violation of the Meyers-Milias-Brown Act

**[*Gov't Code §§ 3502, 3506;* California Code of Civil Procedure §1085]**
***Plaintiffs CRAIG, ANDRADE, and AGUAYO against Defendant CITY of KING***
***CITY***

115.     Plaintiffs hereby incorporate each and every preceding paragraph as
though set forth in full here. Plaintiffs seek a Writ of Mandate ordering the CITY
of KING CITY to comply with Government Code §3502 and §3506.

116.     Government Code sections 3502 and 3506 prohibit public agencies
from interfering with, or discriminating against, public employees because of their
participation in the activities of employee organizations for the purpose of
representation on all matters of employer-employee relations. Plaintiffs seek a Writ
of Mandate ordering the CITY of KING CITY to comply with Government Code
§3502 and §3506.

117.     Section 3502 states, "[e]xcept as otherwise provided by the
Legislature, public employees shall have the right to form, join, and participate in
the activities of employee organizations of their own choosing for the purpose of

representation on all matters of employer-employee relations. Public employees also shall have the right to refuse to join or participate in the activities of employee organizations and shall have the right to represent themselves individually in their employment relations with the public agency."

118.    Section 3506 states, "[p]ublic agencies and employee organizations shall not interfere with, intimidate, restrain, coerce or discriminate against public employees because of their exercise of their rights under Section 3502.

119.    Writ of Mandate is required to gain compliance with the Meyers-Milias-Brown Act. *Henneberque v. City of Culver* (1983) 147 Cal.App.3d 250, 254 ["It has been held that a writ of mandate was proper to correct discrimination against employees who exercise their rights under the Meyers-Milias-Brown Act."]

120.    On September 25, 2010, Defendant BALDIVIEZ issued a memo to all employees with the King City Police Department that Plaintiff AGUAYO was placed on administrative leave and ordered not to have any contact with any employee. If anyone had any contact with Plaintiff

AGUAYO they were to notify Defendant BALDIVIEZ immediately. The scope of this order clearly violated the Meyers Milias Brown Act. Public employees have the right to participate in union activities. This order effectively prevented all employees from having any sort of contact with Plaintiff AGUAYO.

121.    After Plaintiffs engaged in protected activities, including the vote of no confidence in the Chief July 30, 2010, the Defendant CITY of KING CITY, retaliated against Plaintiffs by issuing a blanket no contact order between Plaintiff AGUAYO and Plaintiff's ANDRADE and CRAIG. All three Plaintiffs were board members of the King City Police Officers Association, and the blanket no contact order was implemented in order to interfere with their union activities. Defendant BALDIVIEZ subjected AGUAYO and ANDRADE to adverse employment actions for allegedly violating this unlawful order. Plaintiff AGUAYO was

1  ultimately terminated and ANDRADE was suspended. Plaintiff CRAIG was also
2  terminated for engaging in protected activities.

3  122.    Plaintiffs engaged in activities protected by the Meyers Milias
4  Brown Act. As a direct result of this participation, including the vote of no
5  confidence on July 30, 2010, Defendant CITY of KING CITY took the
6  aforementioned adverse actions against Plaintiffs. Absent said speech activities,
7  the Defendant would not have taken said actions. In doing the things alleged
8  herein, Defendant CITY of KING CITY violated the rights of Plaintiffs as set forth
9  herein.
10

11  123.    As a direct and proximate result of the misconduct and unlawful
12  actions of Defendants, and each of them, Plaintiffs sustained severe and serious
13  injury to their person, all to Plaintiffs damage in a sum to be shown according to
14  proof. As a direct and proximate result of the

15  Defendants' conduct, Plaintiffs have suffered and continues to suffer substantial
16  losses in income, earnings, and benefits and has been damaged in their capacity to
17  earn their salary, and have lost, and will continue to lose, employment benefits.
18  Plaintiffs have also suffered pain and suffering, mental anguish, and emotional
19  distress.

20  124.    General and special damages are sought according to proof.

21  125.    Plaintiffs have exhausted all administrative remedies to compel
22  the relief sought herein, including the filing of a Claim for Damages which has
23  been rejected by operation of law.
24
25  ## COUNT SIX
26  ### Violations of Peace Officer Bill of Rights
27  **[California Government Code §§ 3302(a), 3309.5]**
28  ***Plaintiffs CRAIG, ANDRADE, and AGUAYO against Defendant CITY of KING***
***CITY***

31
COMPLAINT FOR DAMAGES

126. Plaintiffs hereby incorporate each and every preceding paragraph as though set forth in full here.

128. California Government Code section 3302(a) states that "[e]xcept as otherwise provided by law, or whenever on duty or in uniform, no public safety officer shall be prohibited from engaging, or be coerced or required to engage, in political activity."

129. On September 25, 2010, Defendant BALDIVIEZ issued a memo to all employees with the King City Police Department that Plaintiff AGUAYO was placed on administrative leave and ordered not to have any contact with any employee. If anyone had any contact with Plaintiff AGUAYO they were to notify Defendant BALDIVIEZ immediately. The scope of this order clearly violated the Peace Officer Bill of Rights Act. Police officers have the right to participate in union activities. This order effectively prevented all employees from having any sort of contact with Plaintiff AGUAYO.

130. After Plaintiffs engaged in protected activities, including the vote of no confidence in the Chief July 30, 2010, the Defendant CITY of KING CITY, retaliated against Plaintiffs by issuing a blanket no contact order between Plaintiff AGUAYO and Plaintiff's ANDRADE and CRAIG. All three Plaintiffs were board members of the King City Police Officers Association, and the blanket no contact order was implemented in order to interfere with their union activities. Defendant BALDIVIEZ subjected AGUAYO and ANDRADE to adverse employment actions for allegedly violating this unlawful order. Plaintiff AGUAYO was ultimately terminated and ANDRADE was suspended. Plaintiff CRAIG was also terminated for engaging in protected activities.

131. Plaintiffs engaged in activities protected by this statute. As a direct result of this participation, including the vote of no confidence on July 30, 2010, Defendant CITY of KING CITY took the aforementioned adverse actions

32
COMPLAINT FOR DAMAGES

1   against Plaintiffs.  Absent said speech activities, the Defendant would not have
2   taken said actions.  In doing the things alleged herein, Defendant CITY of KING
3   CITY violated the rights of Plaintiff as set forth herein.

4       132.    As a direct and proximate result of the misconduct and
5   unlawful actions of Defendants, and each of them, Plaintiffs sustained severe and
6   serious injury to their person, all to Plaintiffs damage in a sum to be shown
7   according to proof.  As a direct and proximate result of the Defendants' conduct,
8   Plaintiffs have suffered and continues to suffer substantial losses in income,
9   earnings, and benefits and has been damaged in their capacity to earn their salary,
10  and have lost, and will continue to lose, employment benefits.  Plaintiffs have also
11  suffered pain and suffering, mental anguish, and emotional distress.
12

13      133.    General and special damages are sought according to proof.

14      134.    Plaintiff has exhausted all administrative remedies to compel
15  the relief sought herein, including the filing of a Claim for Damages which has
16  been rejected by operation of law.

17      135.    Government Code Section 3309.5 provides that where it finds
18  that a public safety department has violated any of the provisions of the Public
19  Safety Officers Procedural Bill of Rights Act (Gov't Code  sections 3300 et seq.),
20  to render appropriate injunctive or other extraordinary relief to remedy the
21  violation and to prevent future violations of a like or similar nature including, but
22  not limited to the granting of a temporary restraining order, preliminary or
23  permanent injunction prohibiting the public safety department from taking any
24  punitive action against the public safety officer.

25      136.    Defendant CITY of KING CITY employs law enforcement
26  personnel, including Plaintiffs, and is charged with the duty of acting in
27  accordance with the requirements of state law, including Government Code section
28  3300 et seq.

137. Defendants maliciously violated Government Code sections 3300 et seq. with the intent to injure Plaintiff in retaliation for the lawful exercise of his statutory and constitutional rights. Defendants are therefore liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, for reasonable attorney's fees as may be determined by the court, as well as Plaintiff's actual damages, as provided in Government Code Section 3309.5. In engaging in the aforementioned activities, Plaintiffs engaged in activities protected by these statutes. As a direct result of the Plaintiff's protected speech, activities, and disclosures, the Defendants took the aforementioned adverse actions against them. Absent said speech, Defendants would not have taken said actions. In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiffs as set forth herein.

138. In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiffs rights, or at least in conscious, reckless, and callous disregard of Plaintiffs rights and to the injurious consequences likely to result from a violation of said rights.

139. General damages, special damages, and civil penalties are sought according to proof.

## COUNT SEVEN

**Violation of the Confidentiality of Medical Information Act ("CMIA")**

**[Civil Code §§56.35; 56.36(b)]**

*Plaintiff CRAIG against Defendant CITY of KING CITY and GLICK*

140. Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here.

141. Civil Code §56.10(a) states, "[n]o provider of health care, health care service plan, or contractor shall disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization, except as provided in

1  subdivision (b) or (c)."

2       142.     Civil Code §56.10(c)(8) states, "[a] provider of health care or

3  health care service plan that has created medical information as a result of

4  employment-related health care services to an employee conducted at the specific

5  prior written request and expense of the employer may disclose to the employee's

6  employer that part of the information that:

7
8            (A) Is relevant in a lawsuit, arbitration, grievance, or other

9            claim or challenge to which the employer and the employee are

10            parties and in which the patient has placed in issue his or her

11            medical history, mental or physical condition, or treatment,

12            provided that information may only be used or disclosed in

13            connection with that proceeding.

14            (B) Describes functional limitations of the patient that may

15            entitle the patient to leave from work for medical reasons or

16            limit the patient's fitness to perform his or her present

17            employment, provided that no statement of medical cause is

18            included in the information disclosed."

19       143.     As such, absent consent from the employee, an employer

20  has restricted access to the employee's medical records. Civil Code §56.35

21  states,"[i]n addition to any other remedies available at law, a patient whose

22  medical information has been used or disclosed in violation of Section 56.10

23  or 56.104 or 56.20 or subdivision (a) of Section 56.26 and who has sustained

24  economic loss or personal injury there from may recover compensatory

25  damages, punitive damages not to exceed three thousand dollars ($3,000),

26  attorneys' fees not to exceed one thousand dollars ($1,000), and the costs of

27  litigation."

28

145. On January 3, 2011, Plaintiff CRAIG consented to the release of information by Dr. Glick only to the extent that she was already authorized to release by law [California Civil Code §56.10 (c)(8)].

146. CRAIG did not consent to the release of detailed privileged psychological information. Despite the restricted scope of consent, Defendant GLICK unlawfully released confidential information in her report dated January 19, 2011. This blatant disregard of Plaintiff CRAIG's right to privacy and right to limit the scope of protected private information

demonstrated that Dr. Glick is not a neutral psychologist and is instead, performing retaliatory acts against Plaintiff CRAIG, on behalf of Defendant BALDIVIEZ, and as an agent of Defendant CITY of KING CITY.

147. Plaintiff CRAIG was ultimately terminated based on the findings of the Defendant GLICK. As a direct and proximate result of the misconduct and unlawful actions of the Defendants CITY of KING CITY and GLICK, and each of them, Plaintiff sustained severe and serious injury to his person, all to Plaintiff's damage in a sum to be shown according to proof. As a direct and proximate result of the Defendants' conduct, Plaintiff CRAIG has suffered and continues to suffer substantial losses in income, earnings, and benefits and has been damaged in his capacity to earn his salary, and has lost, and will continue to lose, employment benefits. Plaintiff has also suffered pain and suffering, mental anguish, and emotional distress.

## COUNT EIGHT

### Violation of the Confidentiality of Medical Information Act

### [Civil Code §56.20]

### *Plaintiff CRAIG against CITY of KING CITY*

148. Plaintiff CRAIG repeats and re-alleges each and every allegation set forth above, and incorporates same by reference as though set forth fully herein.

1           149.      Section 56.20 of the CMIA provides: "No employer shall use,

2 disclose, or knowingly permit its employees or agents to use or disclose medical

3 information which the employer possesses pertaining to its employees without the

4 patient having first signed an authorization . . .." Plaintiff CRAIG was eventually

5 fired based upon the unlawful disclosure of medical information by Defendant

6 GLICK. As a result, Defendant, City of KING CITY violated Section 56.20(c) of

7 the CMIA. In addition, subsection (b) provides that "no employee shall be

8 discriminated against in terms or conditions of employment due to that employee's

9 refusal to sign an authorization." "An employer 'discriminates' against an

10 employee in violation of [California Civil Code] section 56.20, subdivision (b), if it

11 improperly retaliates against or penalizes an employee for refusing to authorize the

12 employee's healthcare provider to disclose confidential medical information to the

13 employers or others…" Plaintiff CRAIG was fired for refusing to allow the

14 unlawful disclosure of his medical information.

15           150.      As a direct and proximate result of the misconduct and

16 unlawfulness of Defendant, and the resulting termination of Plaintiff's employ,

17 Plaintiff CRAIG has sustained severe and serious injury to his person, all to

18 Plaintiff's damage in a sum to be shown according to proof. As a direct and

19 proximate result of the Defendant's conduct, Plaintiff has suffered and continues to

20 suffer substantial losses in income, earnings, and benefits and has been damaged in

21 his capacity to earn his salary, and has lost, and will continue to lose, employment

22 benefits. Plaintiff has also suffered pain and suffering, and mental anguish and

23 emotional distress.

24           151.      The aforementioned acts directed towards Plaintiff CRAIG

25 were carried out with a conscious disregard of Plaintiff's rights and with the intent

26 to vex, injure and annoy Plaintiff, such as to constitute oppression, fraud or malice.

27

28

## COUNT NINE

### Violation of the Robbins-Rosenthal Fair Debt Collections Practices Act
### [Civil Code §1788 et. seq]

### *Plaintiffs AGUAYO against Defendant CITY of KING CITY and STEWART dba*
### *Aaron's Sales and Lease*

152.     Plaintiff AGUAYO hereby incorporates each and every preceding paragraph as though set forth in full here.

153.     According to Civil Code §1788.12(a), no debt collector shall collect or attempt to collect a debt by communicating with the debtor's employer unless the communication is necessary to the collection of the debt. If the communication is necessary to the collection of a debt, it must first be in writing.

154.     In October 2010, Defendant BALDIVIEZ allegedly received a call from Leticia Diaz, a manager of Defendant STEWART dba Aaron's Sales and Lease, and she stated that Plaintiff AGUAYO was behind in his payments. This communication was not a written communication as required by Civil Code §1788.12(a).

155.     Defendants BALDIVIEZ and CITY of KING CITY used information improperly disclosed by Defendant STEWART dba Aaron's Sales and Lease in order to subject AGUAYO to termination.

156.     Civil Code §1788.30 allows for Plaintiff AGUAYO to institute a civil suit for damages for a violation of this statute

157.     Plaintiff AGUAYO did not consent to the communication by Defendant STEWART dba Aaron's Sales and Lease to his employer Defendant BALDIVIEZ and CITY of KING CITY.

**COMPLAINT FOR DAMAGES**

## COUNT TEN

### Violation of the Fair Debt Collection Practices Act

### [15 U.S.C.A. §1692]

### *Plaintiff AGUAYO against Defendant CITY of KING CITY and STEWART dba Aaron's Sales and Lease*

158.     Plaintiff AGUAYO hereby incorporates each and every preceding paragraph as though set forth in full here.

159.     According to 15 U.S.C.A §1692c(b), "[e]xcept as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post

judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

160.     U.S.C.A §1692b(2) states that the debt collector cannot disclose to a third party that the consumer owes a debt.

161.     In October 2010, Defendant BALDIVIEZ allegedly received a call from Leticia Diaz, a manager of Defendant STEWART dba Aaron's Sales and Lease, and she stated that Plaintiff AGUAYO was behind in his payments. This release of information to Defendant BALDIVIEZ violated the Fair Debt Collection Practices Act.

161.     Plaintiff AGUAYO did not consent to the communication by Defendant STEWART dba Aaron's Sales and Lease to his employer Defendant BALDIVIEZ and CITY of KING CITY.

162.     Defendants BALDIVIEZ and CITY of KING CITY used information improperly disclosed by Defendant STEWART dba Aaron's Sales and Lease in order to subject AGUAYO to termination.

## COUNT ELEVEN

### Violation of the Information Practices Act of 1977

### [Civil Code §§ 1798 et. seq.]

### *Plaintiff ANDRADE against Defendant CITY of KING CITY and STEWART dba Aaron's Sales and Lease*

163.     Plaintiff ANDRADE hereby incorporates each and every preceding paragraph as though set forth in full here.

164.     Civil Code §1798.81.5 (a) states, "[i]t is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own or license personal information about Californians to provide reasonable security for that information…"

165.     According to Civil Code §1798.81.5 (d), driver's license numbers and Social Security numbers are considered "personal information."

166.     In October 2010, Defendant BALDIVIEZ allegedly received a call from Leticia Diaz, a manager of Defendant STEWART dba Aaron's Sales and Lease, and she stated that Plaintiff AGUAYO was behind in his payments.

167.     One week later Defendant BALDIVIEZ allegedly contacted Diaz and discovered that Plaintiff ANDRADE came in and cosigned for the property on behalf of Plaintiff AGUAYO. Leticia Diaz subsequently released Plaintiff ANDRADE's private information (Social Security number and driver's license number) to an unauthorized individual, Defendant BALDIVIEZ, thereby violating the Information Practices Act of 1977.

1  168.    Defendants BALDIVIEZ and CITY of KING CITY used information
2  improperly disclosed by Defendant STEWART dba Aaron's Sales and Lease in
3  order to subject ANDRADE to suspension.

4  169.    Civil Code §1798.84 allows for Plaintiff ANDRADE to institute a
5  civil suit for a violation of this statute.

6                                   **VI.**
7                                 **PRAYER**

8  WHEREFORE, Plaintiffs prays:

9  1.    For general, special, compensatory (including lost wages and
10       benefits), exemplary and punitive damages according to proof;

11  2.    Peremptory Writ of Mandate issue pursuant to Code of Civil
12        Procedure §§ 1085, 1086 compelling Defendants to
13        immediately comply with Government Code §3502 and §3506;

14  3.    For costs of suit;

15  4.    For attorneys fees as permitted by law;

16  5.    For civil penalties as permitted by law;

17  6.    For any injunctive relief as described above; and

18  7.    For any and all other appropriate relief the Court deems necessary.

20  Dated:  May 20, 2011                LACKIE DAMMEIR & MCGILL, APC

24                                      Russell M. Perry,
                                        Attorneys for Plaintiffs,
25                                      CRAIG, AGUAYO and ANDRADE

1

## DEMAND FOR JURY TRIAL

2

3

Plaintiffs CRAIG, AGUAYO, and ANDRADE hereby demand a jury trial

4

under F.R. Civ. P., Rule 38 and C.D. Local Rule 38-1.

5

6

7

8

Dated:  May 20, 2011                    LACKIE DAMMEIER & MCGILL,APC

9

10

11

_____

12

Russell M. Perry,
Attorney for Plaintiffs

13

CRAIG, AGUAYO and ANDRADE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George King and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV11- 4399 GHK (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

ORIGINAL

Name & Address:
Russell M. Perry, (SBN 246252)
russell@policeattorney.com
LACKIE, DAMMEIER & MCGILL, APC
367 North Second Avenue
Upland, CA 91786

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| CHRISTOPHER CRAIG, ABRAHAM AGUAYO, and JAIME ANDRADE, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | CV11-04399GHK(AGRx) |
| CITY OF KING CITY a municipal corporation; NICK BALDIVIEZ, individually and as Chief of Police for the King City Police Department; (See Attachment) DEFENDANT(S). | SUMMONS |

TO: DEFENDANT(S): CITY OF KING CITY, a municipal corporation; NICK BALDIVIEZ, individually and as Chief of Police for the King City Police Department; (See Attachment)

A lawsuit has been filed against you.

Within $21$ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Russell M .Perry _____, whose address is Lackie, Dammeier & McGill, 367 North Second Avenue, Upland, CA 91786 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: MAY 2 3 2011

Clerk, U.S. District Court

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

| SHORT TITLE: | CASE NUMBER |
|---|---|
| ⊢ Craig, et al v. City of King City, et al | |

1  Attachment to SUMMONS : Additional Defendants

2

3  ...MICHAEL POWERS, individually and as City Manager for the King City; MARK BAKER,

4  individually and as Sergeant for the King City Police Department; JERRY HUNTER, individually and as "acting" Sergeant for the King City Police Department; MYRNA GLICK, individually, and as an agent for

5  King City; THE STEWART, LLC, dba Aaron's Sales and Lease; and DOES 1 THROUGH 10

6  INCLUSIVE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

27  This page may be used with any Judicial Council form or any other paper filed with the court.

Page ___2___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501
American LegalNet, Inc.    www.USCourtForms.com

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Christopher Craig, Abraham Aguayo, and Jaime Andrade, | City of King City, a municipal corporation; Nick Baldiviez, individually and as Chief of Police for King City Police Department; Michael Powers, individually and as (See Attachment) |

| **(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): <br> Monterey County | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): <br> Monterey County |
|---|---|

| **(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> Russell M. Perry, Esq. <br> Lackie Dammeier McGill, APC <br> 367 N. Second Avenue <br> Upland, CA  91786     Tel: (909) 985-4003 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No       ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)

42 U.S.C.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS | TORTS | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | PERSONAL INJURY | PERSONAL PROPERTY | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | ☐ 370 Other Fraud | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | ☑ 440 Other Civil Rights | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No  ☐ Yes

If yes, list case number(s):

**CV11-04399**

**FOR OFFICE USE ONLY:**    Case Number:

| CV-71 (07/05) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

| SHORT TITLE: Craig, et al v. City of King City, et al | CASE NUMBER: |
|---|---|

1  Attachment to CIVIL COVER SHEET : Additional Defendants

2

3  ... City Manager for the King City; MARK BAKER, individually and as Sergeant for the King City Police
4  Department; JERRY HUNTER, individually and as "acting" Sergeant for the King City Police
    Department; MYRNA GLICK, individually, and as an agent for King City; THE STEWART, LLC, dba
5  Aaron's Sales and Lease; and DOES 1 THROUGH 10 INCLUSIVE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

27  This page may be used with any Judicial Council form or any other paper filed with the court.

Page ___2___

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b).  RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No  ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
   Monterey County

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
   Monterey County

**List the California County,** or  State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.
   Monterey County

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date  5/20/11

**Notice to Counsel/Parties:**  The CV-71 (JS-44)  Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |